Good morning, Your Honors. May it please the Court, my name is Jin Choi. I represent the appellant in this action. And if I may, I would like to try to reserve some time for rebuttal. Your Honors, in the last few weeks, the Supreme Court has, on two separate cases, reiterated fundamental requirements that govern the Qualified Immunity Analysis. First, the constitutional right in question must not be defined at a high level of generality, but must be particularized to the specific facts of each case. Second, in determining whether the law pertaining to that right was clearly established, only the law existing at the time of the incident can be examined. If the answer to that question is not beyond debate, qualified immunity must be granted. As the Supreme Court explained in Taylor v. Barks, one of the recent cases, the precedent had to have been on the books at the time of the incident for the law to have been clearly established. This means that the plaintiff, Mr. Carrillo, must prove beyond any debate that in 1991, a police officer had a constitutional duty under Brady v. Maryland to disclose any possible deficiencies with how photographs were shown to an eyewitness. The plaintiff cannot make this showing. It's not so much that he has to reveal to the defendant, because he's got no direct contact with the defendant, but he must not suppress exculpatory evidence, suppress from the prosecutors. Isn't that the rule in Brady? The rule in Brady applies only to prosecutors, Your Honor. But it deals with suppression of evidence. The prosecutor can't suppress the evidence. He must reveal it to the defendant. The police officer cannot suppress the evidence from the prosecutor, can he? Well, the law relating to exactly what a police officer must do under the dictates of Brady v. Maryland have been in flux, has been in evolution, have evolved over the last few decades. Are you familiar with the case of Tennyson? Yes, Your Honor. Now, Tennyson was a 1990 case. The underlying investigation in Tennyson, what did take place in 1990, Your Honor? But as the Supreme Court has said over and over, and as your honors have recognized in various cases, when dealing with the issue of qualified immunity and specifically with the prong of whether the law was clearly established, the determination of whether a particular right was clearly established has to be based on the law that was existing at the time, and the questions related to that particular right had to be beyond debate to deny qualified immunity. Okay, so what about Butler, U.S. v. Butler, 1978 case? Yes, Your Honor. That's a 1978 United States, excuse me, Ninth Circuit case arising out of the criminal context. And what Butler and other cases the plaintiff has cited prior to 1991 all arise out of the criminal context, and they relate to what the burden and obligation of the prosecution is with respect to exculpatory evidence. Yes, but they're also saying what the defendant's right is. He has a right to exculpatory evidence under Brady. Correct, Your Honor. Okay, and in Butler we said, The prosecutor is responsible for the nondisclosure of assurances made to his principal witnesses, even if such promises or other government agents were unknown to the prosecutor. Since the investigative officers are part of the prosecution, the taint on the trial is no less if they, rather than the prosecutor, were guilty of nondisclosure. It cites a Fourth Circuit case going back to the year after Brady, which is Barbie v. Warden. So you're saying that because that didn't say that the officers had a responsibility, even if their nondisclosure would taint the trial, the defendant's rights, that it wasn't clear to an investigative officer that he had an obligation not to violate the constitutional rights by withholding exculpatory evidence? I believe if you look at the case law that slowly came out, whether from the Supreme Court or the Ninth Circuit, and specifically if you look at the Butler case and cases similar to that, I am looking at Butler. That's what I just read from. Yes, Your Honor. Okay. Cases like Butler specifically relate to what is the scope and breadth of the duties and obligations of the prosecution is under Brady. Of the prosecution. Yes. And Butler makes it clear that the investigative officers are part of the prosecution. That's true. In cases like Butler and other cases arising out of criminal proceedings, if the prosecution is unable to produce material exculpatory evidence to the criminal defendant, thereby resulting in the denial of a fair trial or due process, that would lead to the overturning of the criminal conviction. And if this decision had been overturned because the exculpatory evidence had been suppressed, then there wouldn't be any civil claim. Right. But if the. So the failure to turn the pardon me, the suppression of the evidence was a substantial factor in causing the damage claimed. I'm not disputing that, Your Honor. And I mean, you're trying to say Brady only applies in criminal cases under Butler. But the effect of suppressing the evidence is to cause civil damage. The fact that a overturning of a criminal conviction and in a case like Butler could lead to civil damages. I'm not disputing that. I'm sorry. I misunderstood you. What our argument is focused on is what was the law at the time in 1991 with respect to police officers specifically tied to the obligations under Brady. What do you think of their obligations today? Well, the obligations today are established in 2009 by the Tennyson case, at least within the Ninth Circuit. And you think that Tennyson, does Tennyson go beyond Kyle?  I think Tennyson is more clear in holding that, at least within the Ninth Circuit, the obligations to disclose exculpatory evidence is borne by the police officers as well as prosecutors. What Kyle held was that even if information is known to the police but not to the prosecution, the prosecution cannot avoid the overturning of the conviction based on the fact that they themselves did not know of the evidence. And that case, as we point out, and it's significant to this case, did not come out until 1995. And the Tennyson case came out 18 years after this incident. Although it related back to 1990. It did. So as of 1990, then, we have to assume that we thought. This isn't implicit in our decision in Tennyson, but as of 1990, that position was clearly established. If you look at the actual qualifying analysis in Tennyson, first of all, they said, okay, as a threshold matter. But it can only apply. I mean, it's only good if it was good in 1990, right? That's true, Your Honor. And the particular right in Tennyson involved whether the police officers should have disclosed a Mirandized confession of a person involved in the incident to the criminal defense. And that particular right, the Ninth Circuit held in denying the officers qualified immunity, was clearly established in 1990. The right in this case is very different from the right that was at issue in Tennyson. And as the Supreme Court has said over and over, you have to look at the particular right in question. What would have made this one different? Well, the law was, as of 1991, you didn't have Tennyson. You didn't have. No, you have to assume that as of 1991, as a result of Tennyson, Tennyson, they're only liable if it was clearly established in 1991, right? That's what Tennyson has to hold. Yes, Your Honor. Okay. And I don't know what there was, what happened in 1991 that would be different from 1990 or 1989 or 1988. In other words, you have to find something else before 1991. But Tennyson is, it is implicit in Tennyson that it was clearly established as, at least as of 1991, that the officers had a duty to turn it over to the prosecution so it could be released to the defense. Right, to turn over the Miranda's confession. Right. In this case, the facts underlying the Brady claim is extremely different from the Brady claim in Tennyson. Okay, so what you want to argue here is not that you didn't have a duty under Brady to turn over exculpatory evidence, but that it wasn't clearly established that you had to turn over something other than a Miranda-ized confession by somebody else. Yes, Your Honor. That's very, very specific. That's a very, very different argument. Well, I think that's the second part of our qualifying argument, Your Honor. Not only was there an absence of... You want to argue that the general Brady proposition was probably established, but not the specific obligation. Well, the general Brady obligation vis-a-vis the prosecution was clearly established by Brady and subsequent cases. Right, and Butler says it applies to the police as well. We've got other cases. There's Shea. Let's see, there was Jackson, Steele. We have a number of cases in which we've applied both Brady and Giglio, said there is a general obligation on the part of the police who are part of the prosecution's team to alert the prosecution so they can fulfill their duty under Brady. I would characterize those cases a little differently, Your Honor. Those cases, again, related to what is the obligation of the prosecution during the course of the criminal proceeding, whether it's the information held by police officers or not. And those cases, in effect, mirror the facts and analysis in Ciles v. Whitley. And the fact that other circuits, whether it's the 1st, 3rd, 4th circuits and other circuits that we've addressed in our briefs where we make very clear, of course, all over the country have grappled with this issue. Specifically, what is the relationship or effect of Brady v. Maryland on police officers' duties as opposed to prosecutors? Because the Brady v. Maryland cases have always been focused on what are prosecutors supposed to do, not police officers. And the various other circuits have been very forthright in saying the law is not clearly established as to what police officers are supposed to do vis-a-vis Brady. And I think in 1991, the law was even less clearly established. And no police officers were put on notice by any particular case, whether it's 9th Circuit or Supreme Court. They were put on notice as to what? That they specifically, under Brady v. Maryland, were required to disclose potentially escopic evidence. Even though in Butler, in the passage that Judge Fisher read you, since the investigative officers are part of the prosecution, the taint on the trial is no less if they, the prosecutive officers, rather than the prosecutor, were guilty of nondisclosure. And you couldn't read that and figure out that you had a duty to disclose? I, in light of how the, I think, again, in light of where... That's a pretty tight reading of Butler, isn't it, by the officers? Well... If you were counsel to the police department, you'd have told them to release this, wouldn't you? I may have, but what we're talking about is whether the constitutional question in this particular case was beyond debate in 1991. And the... It doesn't look like it was up for debate as of 1978. As to the duties of the prosecution, Your Honor... No, that said that the investigative officers are guilty of nondisclosure. Which... I'm reading the language from the case. Again, I think we're just reading the two cases, that body of cases, differently from the actual cases where police officer duties were examined and cases where Brady claims were brought. And... Another factor with respect to Tennyson is, if the Butler and cases similar to those so clearly established that police officers were bound by... Bound to disclose evidence pursuant to Brady, the reasoning and the actual opinion in Tennyson doesn't really make too much sense. Because Tennyson in 2009 said, okay, we are now declaring police officers must comply with Brady. If cases like Butler and other cases from 1970s actually clearly established that, the actual analysis and opinion of Tennyson doesn't really make sense. You're faulting us for not having cited Butler in Tennyson. Is that the problem? No, I think those cases weren't cited simply because those cases were pointed to and related to prosecutorial duties. Which was the same thing as the U.S. Supreme Court cases such as Cosby-Whitley, U.S. v. Bagley, going back to Brady v. Mellon. All those cases talk about, this is what the prosecution must do in order to ensure a fair trial to the criminal defendant. And if you look at the... The analysis in Tennyson is shooting down an argument that is the argument you're making, saying it's not a tenable argument. Because we've established your argument wouldn't make any sense in light of the existing law about the nature of Brady and the obligations on the prosecution. So, in shooting down the argument that was being made, you're advancing the notion that, well, if somebody resists what would be otherwise considered clearly established principle of the government's or the prosecution's obligations to turn over exculpatory evidence, well, until we publish a decision shooting down what some might say was a frivolous argument, trying to distance the officers from the prosecution, means that that's evidence in and of itself it wasn't clearly established. I don't follow the logic of saying Tennyson's statements don't make any sense unless it was not clearly established. I just can't buy that. Just to answer your question related to Tennyson, Tennyson clearly related to investigative conduct in 1990 and after the vacating of the criminal conviction, 1983 suit was filed. The police officers sought qualified immunity with respect to a very specific right and before the Tennyson panel answered that particular question, the Tennyson court said, okay, essentially we need to address whether or not Brady even applies to police officers. They said it did and I think there was a logical reason why they did not cite cases such as Butler and other 9th Circuit cases. They cited cases that post-stated this incident by over a decade. Well, they cited Newsom, which is a 7th Circuit case. And that was a 2001 7th Circuit case, Your Honor. They cited it for the proposition stated that it was clearly established in 1979 and 1980 that police could not withhold exculpatory information. Correct, Your Honor. That's what the 7th Circuit held in Newsom. But we have other circuits after Newsom saying exactly the opposite, that the law wasn't clearly established. For instance, in the Gibson case from the 3rd Circuit, they said in 1994 the law was not clearly established and therefore even though they found as of now, as of 2005, a Brady claim could be actionable against an officer, they found as of 1994 the law was not clearly established. And I think that's the kind of analysis that's required by the U.S. Supreme Court in these recent cases. You look at the law that was in existence at the time, the Tennyson panel did go sort of retroactively and I understand why the plaintiffs are relying extensively on Tennyson for that reason. But I would argue that even if we take Tennyson at face value, the fact that they didn't cite any earlier 9th Circuit cases from the Butler era, if you want to call it, on top of that, the particular right that they said was clearly established has no nexus or has no real, it's not close in nature to the right at issue in this case. Now you're getting down to the next level, which is to say, okay, even if it was established that officers were part of the prosecution and therefore the failure to disclose, they wouldn't have known that what was at issue in this case, factually. And you say that in order to be clearly established, if it says in Tennyson you can't fail to disclose a Mirandize confession by somebody else, you can't take that principle and apply it to what your clients did in this case and say, oh, well, no, they didn't talk about some other set of potentially exculpatory facts. And so in order to get it clearly established, even if we agreed in this case, your next case will be, well, we only, you know, the 9th Circuit only dealt with it in this case. It's still not clearly established whether that would apply to some other kind of exculpatory evidence. Is that the essence of what you're saying? I'm not saying the facts have to be exactly the same, Your Honor, for a prior case to demonstrate that a particular right was clearly established. But I do believe that with additional cases, obviously the law becomes clearer as additional factual nuances get addressed by different cases. But just as, you know, one Fourth Amendment case does not establish a clearly established law for the entire, let's say, use of force genre. That's just not true, Counsel. One case can establish precedent. The Supreme Court has held that in 1983 cases that a single case within a circuit is sufficient to establish the proposition. That's that goes back to the 1970s. And I would say Tennyson in 2009 established without any ambiguity that within the circuit, police officers are bound by the obligations. And it said that that was clear as of 1991. And there's nothing in that opinion that suggests that something interesting happened in 1990 to make that applicable or 1989 or 1988. There's no temporal. The only thing that you've got is the fact that we didn't cite Butler and also the actual right. And if we had cited Butler, would you have any argument at all? If in Tennyson we had cited Butler, presumably our argument might be weaker, but it might be a lot weaker, wouldn't it? But the fact is those cases, I think more, I think, as opposed to the notion of exactly what cases were cited or not, what's important is the Tennyson panel characterized the case as raising a threshold issue related to Brady v. Mellon and police officers in the Ninth Circuit. They didn't say that. The inspectors argue first that Brady imposes a duty on prosecutors but not on police officers. They didn't say it was a special issue. They said the inspectors in the case raised the argument, so we will address it. I would also point to the 2013 Gantt v. Gantt case, also from the Ninth Circuit, which clearly characterized Tennyson as the case that held that Brady v. Mellon obligations apply to police officers. Well, that's what we do. We decide cases, and then once there's an opinion that deals with the issue, that repeats it precisely, we cite those cases. We don't go back and sometimes we'll string cite, as they did in this case in Tennyson. We know how to weigh how our opinions are written. I know I'm way beyond the time limit. If I just ask your indulgence, with respect to our position that notwithstanding what Tennyson may have said in 2009, other circuits that have addressed basically the same question have said over and over, or have described the lack of clarity as to this particular question. For instance, the 2010 Fourth Circuit case, Lynn v. Tarney, the court held, it is clear that in essence where a law enforcement officer suppresses favorable evidence such that the prosecutor fails to learn of it, a violation of the Brady Doctrine by the prosecutor results. Counsel, I know we've taken you way over your time, but what do we do with our statement in Jackson v. Brown? Which particular statement? On March, therefore, after citing Butler, therefore on March 30th, 1981, the United States Constitution, as interpreted by Brady and Giglio, compelled prosecutors to disclose evidence favorable to the accused, even when that evidence was known only to the police and not to the prosecutor. Again, that clearly establishes that if the prosecution fails to disclose exculpatory evidence, even if the prosecution did not know of it, that would lead to the overturning of the conviction. Does that mean that the police have an obligation to turn it over to the prosecutor? I think what's an important distinction between those cases and cases such as Tennyson and the other Brady cases that we've addressed in our briefs, cases like Butler and Jackson did not address the issue of qualifying meaning. They're all made in the criminal context, as was Brady itself. Yes, Your Honor. In what way do you think a police officer who has an obligation under Brady should disclose information to the defense? They should go through the prosecution. And that's just obvious, isn't it? Yes, Your Honor. That's obvious to anybody who's worked in the criminal justice system. So it isn't much of a stretch to say, well, if the prosecution has an obligation to turn over evidence that's known not to the prosecutors themselves but only to police, that the police then have an obligation to turn that over to the prosecution to disclose to the defense. I think the Supreme Court in various Brady cases have made it clear that even though the job may be difficult for the prosecution, that's an onus that's put on the prosecution, and at least that's what the cases said in 1991. In those cases, whether it's Butler or whether it's civil cases, they all said, okay, the prosecutor's duties include, initially it was only request ex-compulsory evidence. It eventually became impeachment evidence or evidence that the defense didn't even ask about. So slowly the breadth of the Brady obligation for prosecutors was broadened by the Supreme Court. But none of those cases specifically addressed how do police officers fall into this mix. And our position is, in 1991, police officers did not have any clearly established beyond debate type case law telling them that you guys are going to be violating Brady v. Maryland if you don't produce accessible evidence. That is, you are going to be violating a plaintiff's, I mean a criminal defendant's, constitutional right to have exculpatory evidence. The fact that you're the one that's denying that right, you wouldn't know that, well, if the prosecutor gets sued, that's his problem. And even if I don't tell him, he may be, my knowledge will be imputed to him. But you're saying that the police in that circumstance don't know, aren't on notice, that failure to disclose a Miranda confession in a case, a Miranda confession in a case by somebody else who would prove the innocence of the defendant, the failure to disclose, well, I didn't, you know, I didn't know, that was the prosecutor's problem. And if he came to me and asked me, I would have told him. You're saying you think that would fly as not knowing that they were committing a constitutional tort? Under Tennyson, no. Under Tennyson specifically, no. No, I'm just saying under Brady. Well, my response to that, Your Honor, is that Brady... I don't want to, not whether it was clearly established, but that they wouldn't draw the link, and with all the cases around the country, say the state, the government, the prosecution, the prosecutor, and then the cases that say they're prior to the prosecution, I mean, to make it even clearer? Your Honor, certainly it's fair to assume police officers, to the extent that they're aware of their legal obligations, whether under the Constitution or Department of Policy or what have you, would turn over evidence like that. Well, one assumes so. But our argument is... Not because... Our argument is a qualifying meaning argument, Your Honor. Yeah, they didn't know that they had to. They just would have done it out of the professionalism of their job. Yes, and certainly it would have been within their discretion to do that. But, you know, these, I don't want to belabor the point, but the Supreme Court has said over and over and over again, you look at the law that was in existence at the time, and plus... Perhaps one last question, Mr. Choi. You made the statement, Tennyson didn't cite Butler for a good reason. What's that good reason? Well, because Butler related to what the duties and obligations of a prosecutor are pursuant to Brady, and the analysis of... Butler had that language about the police officers being part of the prosecution. You just draw a distinction between prosecutors who appear in court and the prosecution who are the offices of the prosecutors, including the police. You draw that distinction. For purposes of the Brady analysis, the... What part of the Brady analysis? It's not exculpatory evidence if it's only known to the police. It is exculpatory evidence if it's known to the prosecutor. Is that what you're saying? No, Your Honor. It's exculpatory either way. Of course it is. So what's the difference? Brady and the other cases that were in existence prior to 1991 specifically were focused on what does a prosecutor have to do. Thank you very much. I think I've got my answer. We have taken just a few minutes over your time, counsel, and I appreciate you sticking with us. I'm going to allow you a couple of minutes for rebuttal. Let's hear from Mr. Litt. Good morning. Barry Litt on behalf of Mr. Carrillo. I learned a long time ago not to take up too much time when I think things are going my way, so I only want to make a few points unless you have specific questions for me. One, under the defendant's So you don't get, and I don't think you would in any event, get too cocky. To the extent to which the landscape has been refined, let's put it, by Sheehan and the per curiam opinion following, the Supreme Court, in police cases at least, seems to be very insistent about there being beyond debate, to take the money phrase out of one of them to counsel. So I hope when you address what counsel has argued, you keep in mind what he said about the language in cases, which focused on prosecutors and prosecution, and a lot of that jurisprudence did focus in that way. Well, a lot of it is. So let me start first with the general versus the specific. The Supreme Court in the two recent cases that the defendants cite are dealing with the situation specifically of treatment of mentally ill and in Sheehan, they basically said that in the split second determination of when you can use deadly force, there wasn't any clearly established law that would control that decision. And in Taylor, they basically said that the Third Circuit's decisional law that indicated that jails can't be deliberately indifferent to the mentally ill, wasn't enough to prescribe what kind of procedures, or even that procedures needed to be put into place. I'm acutely aware of what they said, having authored Sheehan, and they also, we were talking in that case about the second entry, yes, he was mentally ill, but the language that they invoked, Al-Kid, and then this notion about beyond debate, and I hope you're right, that it's the mental health aspect. That's why they took the case, as Justice Scalia eloquently pointed out. But I think we have to look and be very cautious in qualified immunity, at least involving law enforcement. So in Mr. Carrillo's case, the issue is eyewitness identification and basically impeachment evidence regarding witness identification. So the two lines of cases that I think speak to that are, one, the general case law that goes back to Napier about credibility and impeachment evidence being critical. Giglio, I don't pronounce it correctly, but however you pronounce it, basically focused on that and made clear that evidence that impeaches a witness is, you're entitled to. And so the, Butler was a promise to dismiss charges cases, that goes to credibility. Jackson v. Brown was a promise to write a letter to place the person in the jail. So in terms of the law clearly indicating that information that impeaches a witness's testimony, that would contradict it in any way or undermine the credibility or give the witness a motive is clearly covered within the Brady rule. But in addition to that, there is specific case law that discusses eyewitness impeachment. I want to start with Manson and Biggers. Those are cases from the 1970s that discuss at length the importance of the reliability of any testimony regarding the eyewitness. So the Supreme Court made clear in the 70s that that was important. In Kyle's, which is a contradictory eyewitness statement case, clearly involving the kind of information we're discussing here, the court referred back to Manson and Biggers. In addition to that, Jones v. Chicago, which is cited in Newsom, is a witness interviews which were hidden in street files, and it found that it was clearly established in 1981. The Geter case from the Fifth Circuit, which we cited, is an eyewitness interview contradicting the testimony, which said that it was clearly established in 1982 in an opinion by Judge Jones. And Tennyson, of course, refers to the language in Newsom v. McCabe. So I think that in terms of even if you look at a relatively specific level, these cases clearly make clear to any reasonable officer that information contradicting an eyewitness statement is important information, information showing that the eyewitness, I mean in this case the evidence is that basically the police officer steered, I think that's a generous description based on the evidence most favorable to us, steered the witness, Scott Turner, toward Mr. Carrillo. So I think on that level, those are the cases that I would point to in terms of the level of specificity, and whatever the Supreme Court has held, I don't think that there's any question that with this body of law, that would be clear to any reasonable officer. I do want to go back, though, for a moment to the foundations of this, which tend to get lost in terms of whether an officer was ever on notice. So I want to start with Mooney. Mooney itself says any action of a state, that's a quote, and it says the legislature, courts, the executive or administrative officers. So Mooney, which is a deceptive evidence case, perjured testimony case, makes clear that this doctrine, and it's discussing the 14th Amendment in the context of a criminal case, that the whole state, all of the different parts of the state are responsible not to do something that leads to the presentation of false evidence. In Pyle versus Kansas, the actual facts of the case are that the prosecutor did not know that the evidence presented was false. The police officers coerced the witness into perjuring himself. When the prosecutor found out, the prosecutor basically said this was wrong, and the issue that was before the Supreme Court was actually whether or not when, although it doesn't discuss that issue, but the underlying facts are that when the prosecution didn't know, it didn't make any difference, there was a violation of due process. So, and then Brady, which basically says, quotes that exact language from Pyle and Mooney, basically says that this is an extension of those cases. So, the point that I want to make is this, the fundamental premise of the police officer's obligation is when you really parse the underlying issues in the cases and what the Supreme Court was talking about, that is the whole foundation of the development of Brady law. There's no question that the police are responsible and that they have an obligation. The controversy, to the extent there is a controversy, is about the issue of what kind of disclosure and the defendants conflate disclosure to the prosecution with disclosure to the defense. Obviously, the police are not the people who make the final call as to what must be disclosed to the defense, but they are responsible to give any favorable evidence to the prosecution whose job it is then to do that. Independently, the prosecutor also has an obligation to ferret out the information, so it's a dual obligation, but there's certainly no suggestion that that dual obligation lets the police suppress evidence willy-nilly and when you look at sort of the foundation of this law, it's clear that they don't do that. The only other point that I want to make is that Jackson v. Brown actually does address functionally the issue of qualified immunity because the issue in Jackson v. Brown was whether or not the law was a new rule in 1981. So when it's discussing it, the defendants cited to Williams v. Moore saying that, well, Justice Stevens and Williams v. Moore suggested that the qualified immunity clearly established inquiry is different from the habeas. That's actually not what Justice Stevens said. Justice Stevens said that the two issues for habeas purposes are functionally equivalent. I think he used the phrase conceptual twins because the issue is whether or not the law was clear under habeas law. What Justice Stevens said was that the doctrines, the body of law are different because the warden was trying to argue that basically the landscape had changed wasn't applicable under ADEPA, however you pronounce it. So unless there are questions, I will stop there. I don't think so. Thank you, Mr. Lit. Thank you. Mr. Choi? I'm not sure if I was able to make this point completely my first time up, but in the context of qualified immunity, government officials, clearly including police officers, are given leeway in terms of knowing what the legal rights are, especially on a constitutional scale. And the Supreme Court and many other courts, whether in the Ninth Circuit or others, have said essentially if judges disagree on a constitutional question, it's unfair to subject police to civil liability for picking the wrong side of that question. And police officers certainly are not expected to be legal scholars and understand exactly how a certain Supreme Court case or a certain Ninth Circuit case with respect to prosecutorial duties impacts their duties and whether or not that subjects them to constitutional liability. Counsel, you know as well as I that Fourth Amendment search and seizure, Miranda, and all of that is part of the police academy training. They may not be legal scholars, but they are bound to uphold the laws of the Constitution and pleading them as if they're laymen on the streets doesn't work. If there's a fundamental right of a defendant to have exonerating evidence, that's not a difficult concept to communicate any more than an unrepresented defendant is entitled to a Miranda warning. The fundamentals of it, if your nuance that you're trying to, as I understand it, builds off the notion that, well, the language of the cases talked about the prosecution, so maybe the police wouldn't understand that they had an obligation, okay? We'll look at that. The next level of specificity is did the exact evidence or behavior, were they unnoticed that what they were looking at or what they were doing or what they were concealing, would they have had some fair warning that that fits within Brady as a materiality. Understand that concept. But to say, well, this principle of police officers not being scholars in the law, the fundamental point is that there is a fundamental constitutional right of the defendant to have exculpatory evidence that's known to the prosecution, and the law enforcement is part of the prosecution, particularly defectives, detectives, who sit at counsel table in the superior court when a case is being prosecuted. If I could just follow up on the second step of analysis that Your Honor articulated. The cases that the plaintiff relies on with respect to Brady and police officers almost always pertain to clearly exculpatory information, evidence about whether it's a confession, another piece of corroborating evidence, things of that nature that can be, in a sort of garden variety fashion, be divulged to the prosecutor. That right, whether or not that's clearly established, I believe is a different question versus whether the right implicated by the Brady claim in this case was clearly established. They're contending that the police officer basically went beyond what he's allowed to do when he showed photographs to a witness, a witness to the murder in this case. In relation to that, they're saying, well, he carried out this photo, showing photographs in an improper way, he should have disclosed that to the prosecutor. And I believe that's a fundamentally different kind of exculpatory evidence, a piece of exculpatory evidence, which is not covered by the case law at the time, whether it's Butler or Jackson or other cases, even Tennyson, Tennyson clearly doesn't involve that kind of evidence. And in this particular case, they're essentially asking the police officer to recognize he did something wrong, first of all recognize that, and then say clearly beyond constitutional debate he was required under Brady to tell the prosecutor the facts related to, in this case, the showing of photographs to a witness. And in light of what the Supreme Court has said recently, I believe that as of 1991, the law was not clearly established that a police officer in the defendant's position in this case would have known beyond debate that he had to go tell the prosecutor facts related to the showing of photographs beyond what he already did. So you would make the same argument, even if Tennyson had cited Butler, and even with Tennyson on the books, that the obligation is clearly established that they have a duty to disclose. Your argument is that, taken down to the level of specificity as to the particular conduct, they wouldn't know that that fits within Brady. I think I said that's the issue. Yes, Your Honor. And I just think we don't need to prolong this for the rest of the day. I just want to make sure we're – because I said there were three levels here, and I think you're now responding to my third level of specificity,  I appreciate that, Your Honor. And that was one of the additional points I wanted to make. Does Your Honor have any more questions? I think we've exhausted our questions. We thank counsel for the argument. We thank both counsel for a very useful argument. The court is going to take a brief recess and we'll resume in about 10 minutes.
judges: Fisher, Bybee, Bea